GLAUBER v. H. MUELLER MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. January 19, 1909. Rehearing Denied February 19, 1909.)

No. 1,471.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—VALVE MECHANISM FOR WATER FAUCETS.

The Glauber patent, No. 586,996, for an improvement in liquid shut-offs, consisting of a valve mechanism for water faucets in which a primary valve "substantially disk-shaped" is mounted on the stem of the main valve of a size to practically close the passage in advance of the main valve, which prevents hammering in the pipes from two sudden closing, discloses invention, and the claims are sufficiently broad to cover other means that are mere mechanical equivalents. The patent held infringed by a device which differs from that described only in that the primary valve was plug-shaped and integral with the stem, instead of removable.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

The decree appealed from dismissed the bill for want of equity. The bill is to restrain infringement of Letters Patent No. 586,996, issued July 27th, 1897,

to Joseph H. Glauber, for an improvement in Liquid Shut-Offs. Figure 1 of the drawing of the patent is as follows:

The particular thing to be overcome, and the way in which, under the patent, it is overcome, is set forth in the patent as follows:

It is well known that generally in dwellings and buildings where water is supplied under pressure there is a constant tendency to what is known as "hammering" or "pounding" in the pipes. In some places this is more noticeable than in others, but it is liable to occur anywhere if the pressure is sufficient, and especially if the water be turned off suddenly. I am of course aware that I am not the

Fig. 1.

first person who has attempted to remedy this very disagreeable effect, and I also know that various devices and mechanism having this purpose in view have been made and patented, but I am not aware that any existing patent is based on the right remedial theory or that any inventor has before disclosed a construction which wholly overcomes the trouble. I have myself discovered that a very slight departure from my theory and construction will totally defeat the remedy, and the invention therefore calls for exactness of construction and detail to make it effective.

To this end the invention consists in a primary closing-valve having a certain function and effect before the main valve is seated, all substantially as shown and described, and particularly pointed out in the claims.

In the accompanying drawings, Figure 1 is a longitudinal sectional elevation of what is known as a "bib" cock or faucet embodying my invention, and Fig. 2 is a sectional elevation of another form of bib-cock in which the invention appears. Fig. 3 is a section elevation of a float-valve mechanism for water-closet tanks to which the invention is adapted. Fig. 4 shows a series of graduated disks which constitute the primary valve in the foregoing views.

Referring now to Fig. 1, A represents the barrel of the faucet, and B the main valve, supported on the stem or spindle C, supported on the crank-shaft D, all of which is a common construction. The valve B presumably is of rubber or its equivalent, and it is adapted to be drawn into the end of barrel A and to be seated therein and cut off the flow of water through the faucet. As shown, the valve is open its full distance.

Now, if the valve B were used alone, as it generally is, there would be inevitable pounding or hammering in the pipes under usual conditions. The barrel and valve shown are old and well known and their association with hammering in the pipes is equally common. Hence the primary valve E, which in this instance has the form of a disk, is placed on the valve-spindle C in advance of valve B. This disk requires to be carefully adapted to the barrel A, so as to practically close the fluid-passage through the same and yet leave a very slight passage for the fluid round about its edge. This passage has to be carefully ascertained, so that it will allow a mere film or very thin sheet of water to pass and not a volume or heavy flow. If the latter occurs the pipe will inevitably pound when the main valve shuts off the flow altogether. It is the sudden shutting off of the water that produces the hammering, but to prevent this more than a gradual closing of the passage is needed. For example, the use of a conical valve with its point in advance will not accomplish the desired result. Other expedients besides conical valves have been tried and failed, and evidently for the reason that they did not comprehend the principle by which alone the result can be controlled. This principle necessitates the sudden, not gradual, closing of the fluid-passage to a practically shut off condition and with only enough escape to relieve the present tension or pressure induced by such sudden action. If the pressure in the pipes be high, as usual, a very slight sheet of water will relieve the strain. This then closes the body of water off, and then the main valve can come safely and quietly to the remainder of the task and close off the sheet or film of water so escaping and the work is done and all noise is absolutely avoided.

Claim 1 (the claim sued upon) is as follows:

"1. The casing provided with a fluid-passage and valve-seat, said passage being of the same cross-section at all points beyond said seat, in combination with a valve-stem, a main valve and a substantially disk-shaped primary valve on said stem of a size to practically close the liquid-passage in advance of the main valve, said primary valve constructed to conform around its entire periphery to the wall of the said water-passage and to close the same evenly all around, substantially as described."

In the brief of appellant, the Glauber valve, when completely open; when at a half stroke; and when completely closed, is shown as follows:

Other patents cited are as follows:

No. 144,097, Oct. 28, 1873, P. Hille.

No. 182,015, Sept. 12, 1876, W. S. Blake.

No. 186,863, Jan. 30, 1877, T. Miekle.

No. 200,871, March 5, 1878, Mueller & Gross.

No. 216,661, June 17, 1879, H. H. Craigie.

No. 251,726, Jan. 3, 1882, Mueller & Gross.

No. 270,355, Jan. 9, 1883, P. White.

No. 299,888, June 3, 1884, P. White.

No. 354,148, Dec. 14, 1886, J. H. Johnson.

No. 412,789, Oct. 15, 1889, H. F. Probert.

No. 418,377, Dec. 31, 1889, P. Mueller.

No. 493,774, March 21, 1893, A. P. Howes.

No. 548,977, Oct. 29, 1895, F. W. Foster.

No. 556,133, March 10, 1896, W. Bunting.

No. 571,023, Nov. 10, 1896, W. Scott.

No. 573,530, Dec. 22, 1896, J. Porteous.

No. 662,013, Nov. 20, 1900, O. Mueller.

Further facts are stated in the opinion.

W. Clyde Jones and Charles C. Linthicum, for appellant.

Albert H. Adams, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge (after stating the facts as above). Appellee's primary valve, instead of being a disk, as described in the

Glauber patent, is plug shaped; and instead of being removable from the stem, is integral with the stem. Upon these differences chiefly the argument of non-infringement is based. But these are differences of construction only. Appellee's device performs the same function, and brings about the same result, as the Glauber patent. The function is the prevention of the sudden shutting off of the water column or other fluid under pressure, thereby relieving the strain, for an interval, during which the water or fluid column continues to flow in a sheet or film around the primary valve—the result being the prevention of hammering; so that whether the appellee's device is an infringement of the Glauber patent or not, depends upon the scope of that patent; for if the Glauber patent is for the mere specific form of performing that function, embodied in the disk shaped primary valve, and further limited by its removability, appellee's device is not an infringement; but if the Glauber patent is more generic—embodies a discovery carried out by suitable mechanical means or their equivalent—appellee's device, notwithstanding the slight difference in form, is an infringement.

With that in view it is to be noted that the removability of the Glauber patent is no essential part of his combination. It is introduced because, as the patent says "it enables me to adapt the valve to faucets of different sizes and kinds, and it also enables me to place the primary valves on faucets now in use, so that old faucets can be equipped with them, and made as good as new ones, so far as hammering is concerned," which makes it a mere incidental advantage, not a function of the combination.

Nor is the Glauber patent limited to the peculiar form of disk shown in figure 1. The description in the claim is "a substantially disk shaped primary valve." "Disk" as described in the Century Dictionary is "any flat or approximately or apparently flat circular plate or surface." A plug shaped device, such as appellee uses, may have a disk shaped face or "surface"; and there is nothing in the proceedings in the patent office that limit this definition; for though in his letter to the patent office appellant describes his disk as a "plain, thin disk," it evidently was not that, that differentiated it in the opinion of the patent office from the prior art, but the new function set forth, viz.: that "its edge is the same all around, and it fits quite closely in the water passage, and depends on a very slight leakage all around, to relieve the hammering."

The truth is, that the gist of appellant's patent is a discovery—the discovery that there will be no hammering in water valves if, instead of a sudden closing of the water column under pressure, the pressure is relieved by means of a continuation, for a brief interval, of a thin sheet or film around a primary valve. True, prior inventors had some inkling of this discovery, groping their way toward it with primary disks that were perforated, or were open at the edges—devices, however, that failed of their object. Glauber was the first to complete the discovery—to see that not only must the volume of water under pressure not be suddenly shut off, but that the gradual shutting off must be by means of a film or sheet that would permit the periphery of the column, for the interval needed, a continued flow.

Why this manner of relief prevents hammering—whether it is be-

cause the integrity of the column under pressure is not broken up, as perhaps it would be in the case of perforations or notches at the edges —is not a thing on which we need to speculate. What this record makes certain is the fact that it does for the first time prevent hammering; and that man is entitled to a patent who, being the first to hit upon a way of bringing about the fact, embodies it in mechanical form, ready to be presented to the world; and this we think Glauber has done, his claim being broad enough to cover other means that are mere mechanical equivalents of the means that he has set forth.

We have considered appellee's contention of "prior use" as also the contention that the patent is too indefinite, but do not regard them as presenting any obstacle to the conclusion to which we have come.

The decree of the Circuit Court is reversed with instructions to enter a decree sustaining the validity of claim 1 of the patent, and finding the appellee's device an infringement thereof, and for an injunction and other relief accordingly.